## HELEN MOLINE v. JOHN A. KOTCH, JR. AND OTHERS.[1]

November 27, 1942.

No. 33,286.

*John E. Katzmarek* and *Edgar S. Young,* for appellant.
*A. Gordon Rosenmeier,* for respondents.

JULIUS J. OLSON, JUSTICE.

Plaintiff appeals from an order sustaining separate demurrers to her complaint on the ground that it fails to state facts sufficient to constitute a cause of action.

The pleading here attacked has all the attributes of a blunderbuss, which has been defined as a firearm "intended to shoot objects at close quarters, without exact aim." However, from a study of it, we have been able to gather these facts: The relationship of plaintiff's intestate and Meri, his widow, to defendant John A. Kotch, Jr. is that of parents and son, and to defendant Bernice Kotch, that of daughter-in-law. "Sometime" in 1936 the senior Kotch "transferred" certain personal property to his son

[1]Reported in 6 N. W. (2d) 462.

and Bernice upon the "terms and conditions" that the latter would "live upon and manage" the father's farm during his lifetime and that of his wife; that they would provide the old folks, or the survivor of either of them, with all the "necessities of life upon said farm"; that the parents were to live on the farm "as members" of their son's "family," and were to receive "one-half of the proceeds of the cream." Provision was made for medical and hospital care in case of illness. Upon the death of the old folks, the expenses of last illness and funeral were also to be met. In event of failure of performance of their several engagements, the son and Bernice were to "forthwith lose" title and possession of the property, which was to "automatically revert to its former status." Later, about September 9, 1938, the farm was conveyed to the son and Bernice "for the consideration and upon practically the same terms" as are recited respecting the personal property. Father Kotch died January 27, 1940. Up to that time there is no claim of contract breach.

In this action the son, Bernice, and defendant American National Bank in Little Falls as their agent are charged with having on September 8, 1941, "unlawfully sold" the personal property, and the son and his wife, with having "abandoned the farm" and having "wholly failed and refused to support Meri." On the next day, Meri commenced an action against her son and Bernice (in which the bank was not joined) seeking to obtain the personal property or its value, and claiming as a basis therefor that she was a joint tenant with her husband and as his survivor entitled to the property or its proceeds. In that action the son and Bernice claimed that they were the owners by virtue of a bill of sale made in 1938 and executed by both parents. (This instrument was filed in the register's office September 10, 1938, official No. 80,143.) They asserted there that the father was "sole owner of said personal property and that Meri" at the time of this transfer had no right or interest therein. On December 24, 1941, an adjudication was made in that action that Meri "was not an owner in joint tenancy of the personal property." Recovery, how-

ever, was granted her to the extent of $395, representing certain property owned by Meri individually. It was also adjudicated, so the allegation is, that the transfer of the personal property from the father to the son and Bernice "was a conditional" one "broken and not fulfilled," and that the bill of sale under which the son and Bernice claimed title "was of no force or effect and did not convey the property described therein."

In the present action it is claimed that on September 8, 1941, defendant bank, as agent of the son and daughter-in-law, conducted an auction sale of the personal property, which was sold for $2,987.03, and that that money now is in the possession and under the control of defendants. The relief sought is the recovery of $2,592.03, the difference between the sale proceeds and the $395 theretofore recovered by Meri in the former action. It is therefore apparent that the present action is but another way to accomplish the same purpose as Meri, in her action, upon the same basic facts, sought unsuccessfully to accomplish.

The trial judge deemed it "obvious" that the representative of decedent's estate "is not attempting to recover and could not recover merely because Meri Kotch, as one of the parents, survives."

In sustaining the demurrers the court cited and relied upon Gamble v. Mosloski, 187 Minn. 640, 246 N. W. 368, and Malicki v. Malicki, 189 Minn. 121, 248 N. W. 723. Plaintiff relies upon Portner v. Wilfahrt, 85 Minn. 73, 88 N. W. 418, and we shall dispose of it first. The facts in that case were that on May 21, 1885, Johann Portner and wife conveyed the husband's farm to their son Andrew Portner, one of the defendants in the case, and received from him a bond payable to the parents "or their assigns, or each of them," to secure maintenance for the lifetime of each. But there were other provisions too, in that certain cash payments should be made to the other children. The bond also provided (85 Minn. 73, 74, 88 N. W. 418) "for the payment of a certain sum of money to each obligee, and the conditions thereof were made a specific lien on the land" so conveyed. Amongst these, one of "$300 with interest at seven per cent from January 1, 1887,

was not demanded until after" the death of Johann Portner, who died June 24, 1900, intestate. In 1896 the son had conveyed the farm to Wilfahrt subject to the bond, which was recorded. The action was brought by the widow as administratrix of her husband's estate "to recover from the defendants the amount so reserved." Decision there was that the cause (85 Minn. 74, 88 N. W. 419) "did not die with the person, but survived to the personal representative." Obviously, we think, the factual situation there presented was not at all similar to that which we have here.

In this case there was a present "transfer" from the parents to the son and Bernice of the involved property. There was no lien. Instead, the "transfer" was conditioned upon the continued performance by them of their obligations created by the agreement. Clearly, it was not intended for the benefit of the heirs of the parents or to create an estate for them. The conditions were specifically personal to the parents and the agreement by its terms limited to them. In principle, there is no distinction between this case and the Gamble case, 187 Minn. 640, 642, 246 N. W. 368, where we said:

"We construe the 'conditions' of the deed as an agreement, secured by a lien but *personal to the grantors, for their support.*" The performance, "which was in the nature of a condition subsequent, 'was purely personal' to the grantor and so 'not transferred to her executor, legatees or devisees.' * * * That money was reserved rather than money's worth in personal services or provisions or a place of abode can make no difference as long as it is clear that the benefit is intended personally for the grantors rather than generally for them and their heirs and assigns. That issue was not raised in Childs v. Rue, 84 Minn. 323; 87 N. W. 918. There the only material question was one of construction—was a lien reserved by the deed. The court did not consider whether the right to enforce the lien was personal to the grantors." (Italics supplied.)

In the Malicki case, 189 Minn. 121, 248 N. W. 723, an action by the representative of the estate of a grantor owner to set aside

certain deeds from parents to their two sons, one of which deeds was given in consideration of a contract to support the parents for the rest of their lives, we specifically determined (189 Minn. 122, 248 N. W. 723), upon authority of the Gamble case, "that the cause of action, if any, for breach of condition subsequent, which reposed in the parent grantors during their lifetime," did not survive so as to make "available to their personal representative" a cause of action for alleged defaults occurring during the lifetime of the grantors. Portner v. Wilfahrt, 85 Minn. 73, 88 N. W. 418, and other cases were considered, since the plaintiff there, as here, attempted to "distinguish the recent case of Gamble v. Mosloski, 187 Minn. 640, 246 N. W. 368," from those cases. In the Malicki case we also said (189 Minn. 123, 248 N. W. 723) "that the provision for payment was for a purely personal benefit to the grantor and not for the benefit of his heirs or assigns. * * * Here the alleged breach was of a peculiarly personal obligation obviously beneficial to the grantors alone and not available in kind to their heirs or assigns."

Here, according to the complaint, the owner of the farm and of the personal property "transferred" to the son and daughter-in-law the property here involved with the proviso that if a breach occurred "during the lifetime of John Kotch, Sr. and Meri Kotch, or the survivor of either of them, in such event they shall forthwith lose the possession, control, and management of said personal property, and the *title and possession of said property shall automatically revert to its former status.*" (Italics supplied.) We can find no other purpose expressed in the alleged agreement than that of supporting and personally rendering service to and for the parents. Upon the authority of the cases upon which the trial court relied, we think the correct result was reached. There being no breach of duty while the father was still alive, no cause of action could pass to the representative of his estate. Whatever cause the surviving widow may have had or still has should be conducted by her in her own name and right. We are not called upon, nor do we intimate, much less determine here, what the

rights and remedies of the widow are. She may have the rights and remedies of a third-party beneficiary (2 Dunnell, Dig. & Supp. § 1896, and cases under notes), or possibly she may prosecute her action as for breach of contract.

Order affirmed.